1  Roland Tong (State Bar No. 216836)
     *rjt@manningllp.com*
2  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
3  19800 MacArthur Blvd, Suite 900
   Irvine, California 92612
4  Telephone: (949) 440-6690
   Facsimile: (949) 474-6991
5
   Attorneys for Plaintiff
6

7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  Endonovo Therapeutics, Inc.,          Case No.

12            Plaintiff,                  **COMPLAINT FOR PATENT**
                                          **INFRINGEMENT**
13        v.

14  BioElectronics Corporation,

15            Defendant.                  **DEMAND FOR JURY TRIAL**

16

17          **COMPLAINT FOR PATENT INFRINGEMENT**

18        Plaintiff, Endonovo Therapeutics, Inc. ("Endonovo"), files this Complaint for

19  Patent Infringement against BioElectronics Corporation ("BioElectronics"), and

20  Demand for Jury Trial. Endonovo hereby complains and alleges as follows:

21

22                      **INTRODUCTION**

23        1.    Endonovo owns several patents based on the innovations of Dr. Arthur

24  A. Pilla involving electromagnetically based medical therapies.

25        2.    Dr. Pilla was a well-known pioneer in the field of electromagnetic

26  therapies. Dr. Pilla's life was focused on research involving the biological effects of

27  electromagnetic fields and the use of such fields in healing various ailments in

28  numerous areas of medicine.

4838-2579-3687.1
                                                              Case No.
                  **COMPLAINT FOR PATENT INFRINGEMENT**

3.      Dr. Pilla invented the first FDA-approved bone healing device using Pulsed Electromagnetic Fields (PEMF).  This device was designed to help hard to heal fractures, or non-unions. Dr. Pilla's discoveries led to the creation of an entire industry in Electrotherapeutics.

4.      Dr. Pilla obtained several patents on these EMF technologies he developed. Endonovo currently owns the rights to many of Dr. Pilla's patents, which have been infringed and continue to be infringed by several products that Defendant has made, used, imported, sold and/or offered for sale.

5.      Defendant has made, used, imported, sold and/or offered for sale its infringing products for use in the same fields which Endonovo's patents intended them to be used, and for the same purposes which the patents are directed.

6.      Defendant has also created advertisements and instructions which describe infringing product uses and instruct users to combine components and/or otherwise use products in certain ways which infringe Endonovo's patented method claims.

## NATURE OF THE ACTION

7.      This is a patent infringement action, based on the patent laws of the United States, codified at 35 United States Code, sections 271, *et seq*., brought by Endonovo against Defendant for its infringement, including willful infringement, of two United States Patents owned by Endonovo, the patent numbers and titles of which are:

    a. U.S. Patent No. 7,740,574, entitled "Electromagnetic Treatment Induction Apparatus and Method for Using Same" ("The '574 Patent");

    b. U.S. Patent No. 7,758,490, entitled "Integrated Coil Apparatus for Therapeutically Treating Human and Animal Cells, Tissues and Organs with Electromagnetic Fields and Method for Using Same" ("The '490 Patent");

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

8.     A true and correct copy of The '574 Patent is attached to this Complaint as Exhibit A.

9.     A true and correct copy of The '490 Patent is attached to this Complaint as Exhibit B.

10.    The '574 and the '490 Patents are collectively referred to as "Patents-in-Suit,"

## PARTIES

11.    Plaintiff Endonovo Therapeutics, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 6320 Canoga Avenue, 15th Floor, Woodland Hills, CA 91367.

12.    Defendant BioElectronics, Inc. is a corporation organized under the laws of the State of Maryland, with its principal place of business located at 4539 Metropolitan Court, Frederick, Maryland 21704.

## JURISDICTION AND VENUE

13.    This civil action arises out of the United States patent laws codified at 35 United States Code sections 1 *et seq.*, thereby providing this court with subject matter jurisdiction over this action pursuant to 28 United States Code section 1331 and 1338 subdivision (a), where this is a federal question involving patent infringement. The federal district courts therefore have original jurisdiction.

14.    This court has personal jurisdiction over Defendant BioElectronics, as it also derives substantial profits, revenue and/or income from the sale of its own infringing products within California, including direct sales as well as indirect sales through its own distributors and/or retailers located in California, or that knowingly distribute or sell products to California consumers and/or businesses.

15.    Venue is proper in this court pursuant to 28 United States Code sections 1391 and 1400 where these Defendant resides, or has committed acts of infringement within this district and has a regular and established place of business.  Upon

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

1    information and belief, BioElectronics has a sales office and agent for service of

2    process located at 31255 Cedar Valley Drive, Westlake Village, CA 91361.

3                              **FACTUAL BACKGROUND**

4           16.    Dr. Arthur Pilla was an internationally recognized authority on non-

5    invasive electrotherapeutics, who developed many products and patented

6    technologies before his death in 2015.

7           17.    During his life, Dr. Pilla conducted pioneering research in

8    electromagnetic field (EMF) effects on living tissue and as of his death has already

9    been awarded at least 16 patents with another 21 patents pending in the area of EMF

10   therapeutics.

11          18.    Dr. Pilla founded several EMF companies, including Ivivi

12   Technologies ("Ivivi"). He patented several technologies during his time at Ivivi,

13   assigning those patent rights to Ivivi.

14          19.    Ivivi was a subsidiary of another company, ADM Tronics Unlimited,

15   Inc. ("ADM").

16          20.    Rio Grande Neurosciences, Inc. ("Rio") acquired certain ADM and

17   Ivivi assets over the course of several years. By 2015 Rio had acquired all of Ivivi's

18   PEMF technology based patents, which Rio had previously licensed.

19          21.    Endonovo thereafter acquired these PEMF-based patent rights from

20   Rio on December 26, 2017.

21          22.    Endonovo specifically acquired several patents which Defendant has

22   been infringing and continue to infringe by making, creating, producing,

23   manufacturing, importing, supplying, distributing, using, selling, reselling and/or

24   offering to sell various infringing products or components contained therein which

25   infringe alone or in combination.

26   ///

27   ///

28   ///

4838-2579-3687.1

Case No.

**COMPLAINT FOR PATENT INFRINGEMENT**

1

**PATENTS, ASSIGNMENT PATENT AND OWNERSHIP**

2          23.     The '574 Patent was granted on June 22, 2010.

3          24.     All rights, title, and interest in the '574 Patent at the time it was

4     granted, were assigned to Ivivi. Rio later acquired all rights, title and interest to the

5     '574 Patent, which it then sold to Endonovo.

6          25.     Since December 26, 2017, Endonovo has owned all rights, title and

7     interest in the '574 Patent.

8          26.     The '490 Patent was granted on July 20, 2010.

9          27.     All rights, title, and interest in the '490 Patent at the time it was

10    granted, were assigned to Ivivi. Rio later acquired all rights, title and interest to the

11    '490 Patent, which it then sold to Endonovo.

12          28.     Since December 26, 2017, Endonovo has owned all rights, title and

13    interest in the '490 Patent.

14    **DEFENDANT'S KNOWLEDGE OF THE PATENTS AND WILLFUL**

15    **INFRINGEMENT**

16          29.     Dr. Pilla was a pioneer in the area of EMF technologies, including

17    PEMF, and incorporating those technologies into healing and therapeutic devices and

18    medical therapies. Anyone practicing in electromagnetic therapy research and

19    product development is aware of Dr. Pilla and his research, since it forms the basis

20    of all such technologies, and whose innovations have been patented in this and many

21    other countries.

22          30.     On December 1, 2016, Defendant BioElectronics submitted its 510(K)

23    premarket notification of intent to market the infringing ActiPatch device (Exhibit

24    C).  BioElectronics listed as its predicate device the IVIVI Torino II K070541, which

25    is the device protected by the Patents-in-Suit and sold by the owner of the Patents-

26    in-Suit at the time.  A copy of the chart submitted by BioElectronics in its 510(K)

27    filing comparing the technical features of its Actipatch device with the IVIVI Torino

28    II K070541 is reproduced below.  Some of the technical features, such as the

4838-2579-3687.1
5
Case No.

**COMPLAINT FOR PATENT INFRINGEMENT**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

1    anatomical sites, portable, how energy is deposited, carrier frequency, burst duration,

2    burst frequency, energy deposited, and power required, are the same exact technical

3    features covered in many of the claim limitations of the Patent-in-Suit.

4         31.    Plaintiff's products, including the IVIVI Torino II K070541 and the

5    Sofpulse, have patent markings, which serve as constructive notice of Plaintiff's

6    patent rights to Defendant.

7         32.    Defendant thus has knowledge at least as of the filing of this Complaint,

8    or had or should have knowledge of the Patents-in-Suit well before then, and thus is

9    willfully, knowingly and/or recklessly infringing Patents-in-Suit by and through their

10   ongoing and continued wrongful activities.

11                   **DEFENDANT'S INFRINGING ACTIVITIES**

12        33.    Defendant makes, markets, imports, uses, sells, and/or offers for sale

13   several products employing pulsed shortwave therapy technology that uses low

14   power pulsed electromagnetic fields ("Accused Products") within the United States,

15   including this district, which infringe the Patents-in-suit.

16        34.    Non-limiting examples of Accused Products sold by Defendant that

17   infringe the Patents-in-Suit include the ActiPatch Therapy Trial, ActiPatch Knee

18   Pain Therapy Kit, HealFast Crescent Patch, HealFast Square Patch, and the HealFast

19   Pet Patch Loop.

20                         **INFRINGEMENT CLAIMS**

21                               COUNT I

22   **(Direct Infringement of the '574 Patent pursuant to 35 U.S.C. §271(a).)**

23        35.    Endonovo repeats, realleges, and incorporates by reference, as if fully

24   set forth herein, the allegations of all preceding paragraphs, as set forth above.

25        36.    Defendant has infringed and continues to infringe one or more of the

26   claims of the '574 patent, by making, using, selling and/or offering for sale within

27   the United States, or otherwise importing into the United States the infringing

28   products and/or infringing components of those products in violation of 35 United

1  States Code, section 271, subdivision (a).   More particularly, Defendant's
2  manufacture, use, sale, and/or offer for sale in the United States and/or importation
3  into the United States of at least the Accused Products infringe at least claim 1 of the
4  '574 Patent ("Asserted '574 Patent Claim").   Plaintiff reserves the right to assert
5  additional claims of the '574 patent after a reasonable opportunity for investigation
6  and discovery.

7         37.    Defendant's infringement of the '574 Patent is based on literal
8  infringement or infringement under the doctrine of equivalents, or both.

9         38.    Defendant's acts of making, using, selling and/or offering for sale or
10  otherwise importing the infringing products has been done without license, and
11  without the permission, consent, or authorization of Endonovo.

12        39.    Attached hereto as Exhibit C, and incorporated by reference herein, are
13  claim charts detailing how each of the Accused Product infringes independent claim
14  1 of the '574 patent.

15        40.    The Court has not yet construed the meaning of any claims or terms in
16  the '574 patent. In providing these detailed allegations, Plaintiff does not intend to
17  convey or imply any particular claim construction or the precise scope of the claims.
18  Plaintiff's contentions regarding the construction of the claims will be provided in
19  compliance with the case schedule, any applicable federal or local procedural rules,
20  and/or any applicable orders.

21        41.    Plaintiff contends that each element of each Asserted Claim is literally
22  present in the Accused Products. If as a result of the Court's constructions or other
23  determinations one or more claim elements are not literally present, Plaintiff
24  contends that each such element is present under the doctrine of equivalents and
25  reserves its right to provide more detailed doctrine of equivalents contentions after
26  discovery, a claim construction order from the Court, or at another appropriate time.

27        42.    Endonovo is informed and believes, and on that basis alleges, that
28  Defendant gained substantial profits and revenue, and subjected Endonovo to lost

**COMPLAINT FOR PATENT INFRINGEMENT**

1  profits and revenue through loss of sales of its own products by virtue of their

2  infringement of the '574 Patent.

3       43.    Endonovo has been harmed and sustained damages as a direct and

4  proximate result of Defendant's infringement of the '574 Patent. Endonovo is thus

5  entitled to monetary compensation for Defendant's infringement in an amount to be

6  determined to compensate for Endonovo's lost sales and profits and/or the profits

7  and revenue gained by Defendant through its infringement of the '574 Patent, but in

8  no event less than a reasonable royalty.

9       44.    Endonovo is informed and believes, and on that basis alleges, that the

10  infringement of the '574 Patent by Defendant is and has been intentional, willful and

11  without regard to Endonovo's rights. Defendant is aware of Dr. Pilla and his

12  pioneering EMF research and the patents he obtained while conducting that research,

13  which Endonovo now owns.  Endonovo has patent markings on its own products that

14  provide constructive notice to the Defendant, and Defendant should be aware of the

15  Patents-in-Suit.

16       45.    Despite Defendant's knowledge of the Patents-in-Suit , Defendant sold

17  and continue to sell the '574 Infringing Products in complete and reckless disregard

18  of Endonovo's patent rights. As such, Defendant acted recklessly and continue to

19  willfully, wantonly, and deliberately engage in acts of infringement of the '574

20  Patent, justifying an award for increased monetary damages pursuant to 35 United

21  States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United

22  States Code, section 285.

23       46.    As a result of Defendant's unlawful activities, Endonovo has suffered

24  and will continue to suffer irreparable harm for which there is no adequate remedy

25  at law. Endonovo competes with Defendant in these areas of developing medical

26  device technologies and/or therapies. Endonovo also currently licenses use of the

27  '574 Patent and is engaged in the licensing of its patent portfolio generally.

28  Defendant's continued infringement of the '574 Patent causes, and will continue to

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

1    cause, harm to Endonovo in various ways, including but not limited to, price erosion,

2    loss of goodwill, damage to reputation, lost business opportunities, lost revenue and

3    income from the sale of its own products, and increased direct and/or indirect

4    competition.

5            47.     Monetary compensation alone for the damages incurred due to the harm

6    caused by Defendant's infringing activities is, and will continue to be, insufficient to

7    compensate Endonovo for these harms. Endonovo is therefore entitled to preliminary

8    and/or permanent injunctive relief. Unless enjoined, Defendant will continue its

9    infringing activities and conduct. Thus, injunctive relief is necessary to protect

10    Endonovo from ongoing injury and further damages.

11                                  COUNT II

12    **(Indirect Infringement of the '574 Patent pursuant to 35 U.S.C. §271(b).)**

13            48.     Endonovo repeats, realleges, and incorporates by reference, as if fully

14    set forth herein, the allegations of all preceding paragraphs, as set forth above.

15            49.     Defendant has induced and continues to induce infringement of one or

16    more of the claims of the '574 Patent, in violation of 35 United States Code, section

17    271, subdivision (b).

18            50.     Defendant knew of the '574 Patent as alleged in the preceding

19    paragraphs, as set forth above.

20            51.     In addition to their direct infringement, Defendant has indirectly

21    infringed, and will continue to indirectly infringe the '574 Patent by supplying

22    components and otherwise instructing, directing and/or requiring others, as well as

23    other suppliers, resellers, distributors, customers, purchasers, consumers and/or

24    other users to perform the steps of the '574 Patent's method claims, whether literally

25    or under the doctrine of equivalents, where all such steps of the method claims are

26    performed either by the Defendant or its suppliers, resellers, distributors, customers,

27    purchasers, consumers and/or other users, or some combination thereof.

28

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

52.     Defendant knowingly induced the acts that infringe at least claim 1 of the '574 Patent, namely by instructing their suppliers, resellers, distributors, customers, purchasers, consumers and/or users to position the therapeutic device in proximity to a target pathway structure and to couple the claimed electromagnetic signal to the target pathway structure using the claimed inductive apparatus device thereby providing treatment.

53.     Defendant specifically intended their suppliers, resellers, distributors, customers, purchasers, consumers and/or users to infringe the '574 Patent and knew that their acts constituted infringement.

54.     Such instruction and/or encouragement included, but was not limited to, advising third parties to use the '574 Infringing Products in an infringing manner, and distributing various guidelines and procedures to third parties explaining or instructing those parties on how to use the '574 Infringing Products in an infringing manner, providing mechanisms through which third parties could or may infringe the '574 Patent, as well as by advertising and promoting the use of the '574 Infringing Products in an infringing manner.

55.     Examples of wrongful instruction, encouragement, advertisement, and distribution of guidelines can be seen on Defendant's websites, advertisements for the '574 Infringing Products, as well as Defendant's own FAQ sheets, brochures, User Guides and Instruction Sheets for the '574 Infringing Products, which, among other things, instructs, and/or encourages combining the PEMF inductive devices to a brace or other therapeutic device and/or item which is thereafter placed by the instructions near the location of the injured area requiring the therapy.

56.     Endonovo is informed and believes, and on that basis alleges, that Defendant has gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their indirect infringing activities involving the '574 Patent.

57.     Endonovo has been harmed and sustained damages as a direct and proximate result of Defendant's infringement of the '574 Patent. Endonovo is thus entitled to monetary compensation for Defendant's infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendant through its indirect infringing activities involving the '574 Patent, but in no event less than a reasonable royalty.

58.     Where Defendant has acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of indirect infringement of the '574 Patent, an award for increased monetary damages pursuant to 35 United States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United States Code, section 285, is justified.

59.     Where such indirect infringement also threatens to damage Endonovo in ways that cannot be adequately compensated by monetary compensation alone, Endonovo also requests and is entitled to preliminary and/or permanent injunctive relief from Defendant's ongoing infringing activities.

COUNT III

**(Direct Infringement of the '490 Patent pursuant to 35 U.S.C. §271(a).)**

60.     Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

61.     Defendant has infringed and continues to infringe one or more of the claims of the '490 patent, by making, using, selling and/or offering for sale within the United States, or otherwise importing into the United States, the infringing products, and/or infringing components of those products, in violation of 35 United States Code, section 271, subdivision (a).   More particularly, Defendant's manufacture, use, sale, and/or offer for sale in the United States and/or importation into the United States of at least the Accused Products infringes at least claim 1 of the '490 Patent.  Plaintiff reserves the right to assert additional claims of the '490 patent after a reasonable opportunity for investigation and discovery.

**COMPLAINT FOR PATENT INFRINGEMENT**

62.     Defendant's infringement of the '490 Patent is based on literal infringement or infringement under the doctrine of equivalents, or both.

63.     Defendant's acts of making, using, selling and/or offering for sale or otherwise importing the infringing products and/or related services, have been done without license, and without the permission, consent, or authorization of Endonovo.

64.     Defendant's infringement includes, but is not limited to, the manufacture, use, importation, sale, and offer for sale of the Accused Products.

65.     Attached hereto as Exhibit D, and incorporated by reference herein, ARE claim charts detailing how the Accused Products infringe claim 1 of the '490 patent.

66.     The Court has not yet construed the meaning of any claims or terms in the '490 patent. In providing these detailed allegations, Plaintiff does not intend to convey or imply any particular claim construction or the precise scope of the claims. Plaintiff's contentions regarding the construction of the claims will be provided in compliance with the case schedule, any applicable federal or local procedural rules, and/or any applicable orders.

67.     Plaintiff contends that each element of each Asserted Claim is literally present in the Accused Products. If as a result of the Court's constructions or other determinations one or more claim elements are not literally present, Plaintiff contends that each such element is present under the doctrine of equivalents and reserves its right to provide more detailed doctrine of equivalents contentions after discovery, a claim construction order from the Court, or at another appropriate time.

68.     Endonovo is informed and believes, and on that basis alleges, that Defendant has gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of its infringement of the '490 Patent.

69.     Endonovo has been harmed and sustained damages as a direct and proximate result of Defendant's infringement of the '490 Patent. Endonovo is thus

**COMPLAINT FOR PATENT INFRINGEMENT**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

1  entitled to monetary compensation for Defendant's infringement in an amount to be

2  determined to compensate for Endonovo's lost sales and profits and/or the profits

3  and revenue gained by Defendant through its infringement of the '490 Patent, but in

4  no event less than a reasonable royalty.

5       70.    Endonovo is informed and believes, and on that basis alleges, that the

6  infringement of the '490 Patent by Defendant is and has been intentional, willful and

7  without regard to Endonovo's rights. Defendant is aware of Dr. Pilla and his

8  pioneering EMF research and the patents he obtained while conducting that research,

9  which Endonovo now owns.  Endonovo has patent markings on its own products that

10  provide constructive notice to the Defendant, and Defendant should be aware of the

11  Patents-in-Suit.

12       71.    Despite Defendant's knowledge of the Patents-in-Suit, Defendant sold

13  and continue to sell the '490 Infringing Products in complete and reckless disregard

14  of Endonovo's patent rights. As such, Defendant acted recklessly and continue to

15  willfully, wantonly, and deliberately engage in acts of infringement of the '490

16  Patent, justifying an award for increased monetary damages pursuant to 35 United

17  States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United

18  States Code, section 285.

19       72.    As a result of Defendant's unlawful activities, Endonovo has suffered

20  and will continue to suffer irreparable harm for which there is no adequate remedy

21  at law. Endonovo competes with Defendant in these areas of developing medical

22  device technologies and/or therapies. Endonovo also currently licenses use of the

23  '490 Patent and is engaged in the licensing of its patent portfolio generally.

24  Defendant's continued infringement of the '490 Patent causes, and will continue to

25  cause, harm to Endonovo in various ways, including but not limited to, price erosion,

26  loss of goodwill, damage to reputation, lost business opportunities, lost revenue and

27  income from the sale of its own products, and increased direct and/or indirect

28  competition.

Manning & Kass
Ellrod, Ramirez, Trester LLP
ATTORNEYS AT LAW

73.     Monetary compensation alone for the damages incurred due to the harm caused by Defendant's infringing activities is, and will continue to be, insufficient to compensate Endonovo for these harms. Endonovo is therefore entitled to preliminary and/or permanent injunctive relief. Unless enjoined, Defendant will continue its infringing activities and conduct. Thus, injunctive relief is necessary to protect Endonovo from ongoing injury and further damages.

## COUNT IV

**(Indirect Infringement of the '490 Patent pursuant to 35 U.S.C. §271(b).)**

74.     Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

75.     Defendant induced and continues to induce infringement of one or more of the claims of the '490 Patent, in violation of 35 United States Code, section 271, subdivision (b).

76.     Defendant knew of the '490 Patent as alleged in the preceding paragraphs, as set forth above.

77.     In addition to its direct infringement, Defendant indirectly infringed, and will continue to indirectly infringe the '490 Patent by supplying components and otherwise instructing, directing and/or requiring others, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to perform the steps of the '490 Patent's method claims, whether literally or under the doctrine of equivalents, where all such steps of the method claims are performed either by the Defendant or its suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users, or some combination thereof.

78.     Defendant knowingly induced the acts that infringe at least claim 1 of the '490 Patent, namely by instructing their suppliers, resellers, distributors, customers, purchasers, consumers and/or users to integrate the claimed coupling device with a positioning device to be placed in proximity to a target pathway structure.

4838-2579-3687.1

14

Case No.

**COMPLAINT FOR PATENT INFRINGEMENT**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

79.     Defendant specifically intended their suppliers, resellers, distributors, customers, purchasers, consumers and/or users to infringe the '490 Patent and knew that their acts constituted infringement.

80.     Such instruction and/or encouragement included, but was not limited to, advising third parties to use the '490 Infringing Products in an infringing manner, and distributing various guidelines and procedures to third parties explaining or instructing those parties on how to use the '490 Infringing Products in an infringing manner, providing mechanisms through which third parties could or may infringe the '490 Patent, as well as by advertising and promoting the use of the '490 Infringing Products in an infringing manner.

81.     Examples of wrongful instruction, encouragement, advertisement, and distribution of guidelines can be seen on Defendant's websites, advertisements for the '490 Infringing Products, as well as Defendant's own FAQ sheets, brochures, User Guides and Instruction Sheets for the '490 Infringing Products, which, among other things, instructs, and/or encourages combining the PEMF inductive devices to a brace or other therapeutic device and/or item which is thereafter placed by the instructions near the location of the injured area requiring the therapy.

82.     Endonovo is informed and believes, and on that basis alleges, that Defendant gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their indirect infringing activities involving the '490 Patent.

83.     Endonovo has been harmed and sustained damages as a direct and proximate result of Defendant's infringement of the '490 Patent. Endonovo is thus entitled to monetary compensation for Defendant's infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendant through its indirect infringing activities involving the '490 Patent, but in no event less than a reasonable royalty.

84. Where Defendant acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of indirect infringement of the '490 Patent, an award for increased monetary damages pursuant to 35 United States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United States Code, section 285, is justified.

85. Where such indirect infringement also threatens to damage Endonovo in ways that cannot be adequately compensated by monetary compensation alone, Endonovo also requests and is entitled to preliminary and/or permanent injunctive relief from Defendant's ongoing infringing activities.

## PRAYER FOR RELIEF

WHEREFORE, Endonovo prays for the following relief:

86. A judgment that Defendant has directly and/or indirectly infringed the '574 Patent;

87. A judgment that Defendant has directly and/or indirectly infringed the '490 Patent;

88. An order and judgment either preliminarily or permanently enjoining Defendant as well as Defendant's officers, agents, affiliates, employees, and/or any other persons acting or attempting to act in concert or participation with Defendant, from any further acts of infringement of the '574 Patent;

89. An order and judgment either preliminarily or permanently enjoining Defendant as well as Defendant's officers, agents, affiliates, employees, and/or any other persons acting or attempting to act in concert or participation with Defendant, from any further acts of infringement of the '490 Patent;

90. A judgment awarding Endonovo monetary damages adequate to compensate Endonovo for Defendant's infringement of the '574 Patent, including any and all pre-judgment and post-judgment interest at the maximum rate permitted by law;

91. A judgment awarding Endonovo monetary damages adequate to

4838-2579-3687.1

16

Case No.

COMPLAINT FOR PATENT INFRINGEMENT

1  compensate Endonovo for Defendant's infringement of the '490 Patent, including

2  any and all pre-judgment and post-judgment interest at the maximum rate permitted

3  by law;

4       92.    A judgment that Defendant has willfully, wantonly and/or deliberately

5  infringed the '574 Patent;

6       93.    A judgment that Defendant has willfully, wantonly and/or deliberately

7  infringed the '490 Patent;

8       94.    A judgment awarding Endonovo increased damages and reasonable

9  attorneys' fees pursuant to 35 United States Code section 285 to the extent that the

10  Court finds this case exceptional with respect to Defendant's infringement of the

11  '574 Patent;

12       95.    A judgment awarding Endonovo increased damages and reasonable

13  attorneys' fees pursuant to 35 United States Code section 285 to the extent that the

14  Court finds this case exceptional with respect to Defendant's infringement of the

15  '490 Patent;

16       96.    That Defendant be ordered to pay all of Endonovo's costs associated

17  with this action; and

18       97.    Any such further relief that this Court determines is proper and just.

19                                **JURY DEMAND**

20       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Endonovo

21  demands a jury trial on all issues so triable.

22

23  DATED:  May 22, 2019           **MANNING & KASS**
                                   **ELLROD, RAMIREZ, TRESTER LLP**
24

25

26                                 By: _____ */s/ Roland J. Tong*_____

27                                     Roland Tong
                                       Attorneys for Plaintiff
28

**COMPLAINT FOR PATENT INFRINGEMENT**